IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE VIII, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>EXXON MOBIL CORPORATION, et al., )<br>)<br>Defendants. )<br>) | Case: 1:07-cv-01022 (LFO) |

**NOTICE OF FILING UNDER SEAL**

The following item is being filed under seal pursuant to LCvR 5.1(j) and Defendants' Motion to File Document Under Seal.

Exhibit 1 to the Declaration of Peter J. Coleman.

Exhibit 1 to the Declaration of Peter J. Coleman is a copy of a production sharing contract between ExxonMobil Oil Indonesia Inc., a defendant herein, and an agency of the Indonesian government.

- 2 -

Washington, DC
September 17, 2007

*/s/ Alex Young K. Oh /ns*
_____
Theodore V. Wells, Jr. (Bar No. 468934)
Paul, Weiss, Rifkind, Wharton
& Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

Alex Young K. Oh (Bar No. 499955)
Paul, Weiss, Rifkind, Wharton
& Garrison LLP
1615 L Street, NW, Suite 1300
Washington, DC 20036

Respectfully submitted,

*/s/ Robert A. Meyer*
_____
Martin J. Weinstein (Bar No. 37792)
Robert J. Meyer (Bar No. 41620)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006
Telephone: (202) 303-1000
Facsimile: (202) 303-2000


Paul W. Wright (Bar No. 20747)
Patrick J. Conlon (Bar No. 414621)
Exxon Mobil Corporation
800 Bell Street
Houston, TX 77002

Attorneys for Defendants
Exxon Mobil Corporation, Mobil Corporation,
ExxonMobil Oil Corporation,
and ExxonMobil Oil Indonesia Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE VIII, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>EXXON MOBIL CORPORATION, et al., )<br>)<br>Defendants. )<br>) | Case: 1:07-cv-01022 (LFO) |

**MOTION TO FILE DOCUMENT UNDER SEAL**

Pursuant to LCvR 5.1(j), Defendants hereby move to file Exhibit 1 to the Declaration of Peter J. Coleman ("Coleman Declaration") under seal. The Coleman Declaration is submitted to the Court in connection with Defendants' motion to dismiss the complaint in the above-captioned matter. Exhibit 1 to the Coleman Declaration is a copy of a production sharing contract ("PSC") between ExxonMobil Oil Indonesia Inc. ("EMOI"), a defendant herein, and an agency of the Indonesian government. The PSC contains confidential proprietary information regarding the terms pursuant to which EMOI operates certain natural gas fields in Aceh, Indonesia, for the Indonesian government; public disclosure of the PSC in its entirety may cause EMOI competitive harm.

An identical copy of Exhibit 1 to the Coleman Declaration has been produced subject to a protective order to Plaintiffs' counsel in a similar matter before this Court, *Doe I, et al. v. Exxon Mobil Corp., et al.* (No. 01-1357 (LFO/AK)), numbered CA0001186134-204. Defendants do not object to Plaintiffs' counsels' use of, and reference to, document CA0001186134-204 in connection with Defendants' instant motion to dismiss in this matter consistent with the sealing

order, if any, to be entered by this Court. Accordingly, Plaintiffs will not be prejudiced by an order of this Court permitting Exhibit 1 to the Coleman Declaration to remain under seal.

For the foregoing reasons, Defendants request this Court enter an order granting Defendants' motion to file Exhibit 1 to the Coleman Declaration under seal.

Washington, DC
September 17, 2007

*[signature: Alex Young K. Oh /ws]*
_____
Theodore V. Wells, Jr. (Bar No. 468934)
PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064

Alex Young K. Oh (Bar No. 499955)
PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP
1615 L Street, NW, Suite 1300
Washington, DC 20036

Respectfully submitted,

*[signature: Robert A. Meyer]*
_____
Martin J. Weinstein (Bar No. 37792)
Robert J. Meyer (Bar No. 41620)
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
Telephone: (202) 303-1000
Facsimile: (202) 303-2000

Paul W. Wright (Bar No. 20747)
Patrick J. Conlon (Bar No. 414621)
Exxon Mobil Corporation
800 Bell Street
Houston, TX 77002

Attorneys for Defendants
Exxon Mobil Corporation, Mobil Corporation,
ExxonMobil Oil Corporation,
and ExxonMobil Oil Indonesia Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN DOE VIII, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> EXXON MOBIL CORPORATION, et al., ) <br> ) <br> Defendants. ) <br> ) | Civ. No. 07-01022 (LFO) |

**DECLARATION OF PETER J. COLEMAN**

I, Peter J. Coleman, based on my personal knowledge or information that has been verified by me after appropriate inquiry, hereby declare as follows:

1. I am President and General Manager of ExxonMobil Oil Indonesia Inc. ("EMOI"), a position I have held since December 16, 2005. Prior to that, I held the position of Senior Vice President of EMOI beginning June 1, 2004 (as confirmed by BP MIGAS, below defined, on or about July 1, 2004). I am authorized to execute this declaration on EMOI's behalf.

2. EMOI is a Cayman Islands corporation with its principal place of business in Jakarta, Indonesia.

3. EMOI's management personnel, employees, and operations are located in Indonesia. At present EMOI has approximately 580 employees, all of whom work and reside in Indonesia.

4. In their Complaint, Plaintiffs make reference to a contract pursuant to which EMOI has the exploration rights to certain natural gas fields in Aceh,

Indonesia. EMOI operates the Arun natural gas field in the Province of Aceh, North Sumatra, under a Production Sharing Contract ("PSC") originally entered into with Perusahaan Pertambangan Minyak Dan Gas Bumi Negara ("Pertamina"), as the representative of the Indonesian government. Pertamina is 100% owned by the Government of Indonesia. A copy of the PSC covering the Arun natural gas field is attached to this Declaration as Exhibit 1.

5. In 2003, as part of government reorganization, Badan Pelaksana Kegiatan Usaha Hulu Minyak Dan Gas Bumi ("BP MIGAS"), a 100% Indonesian state-owned entity, assumed Pertamina's responsibilities under, and the management of, Production Sharing Contracts, including the PSC with EMOI for the Arun natural gas field.

6. EMOI does not own any natural resources or facilities in the Arun field. The PSC defines EMOI as a "Contractor" and EMOI operates the gas field, and its related production and processing facilities, for BP MIGAS as the representative of the Indonesian government and implementing party to the PSC. Article 9.1 of the PSC states that title to equipment purchased for contract operations under the PSC belongs to BP MIGAS.

7. Under the PSC, BP MIGAS is contractually obligated to provide security to protect Arun natural gas field operations and the related facilities and assets owned by the Indonesian government. Article 5.3(e) of the PSC provides that security over the conduct of operations under the PSC is a direct obligation of BP MIGAS. In addition, Indonesian law requires BP MIGAS, which has management responsibilities on behalf of the Indonesian government, to

safeguard the Arun gas field as a "national vital object." A copy of Presidential Decree 63/2004 is attached to this Declaration as Exhibit 2.

8. The PSC was not negotiated, signed, or entered into in the District of Columbia.

9. The PSC is not governed by District of Columbia law.

10. The PSC does not require EMOI to conduct any activity or provide any product or service in the District of Columbia. All of the natural gas produced in the Arun gas field is used, sold, processed into liquid natural gas ("LNG"), or delivered to local industry within the Aceh province. None of the natural gas used or processed into LNG is sold directly to or delivered directly in the District of Columbia through the stream of commerce.

11. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI was not (and is not presently) registered, authorized, or licensed to do business in the District of Columbia.

12. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI did not (and does not presently) conduct any of its business operations in the District of Columbia. In the course of its business operations, past and present, EMOI has not, in any way, sought protection from, or the benefits of District of Columbia law.

13. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI did not (and does not presently) have employees that permanently reside or work in the District of

Columbia.

14. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI did not (and does not presently) have any employees who routinely or continuously enter the District of Columbia for the purposes of advancing EMOI's business or pecuniary interests in the District of Columbia.

15. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI did not (and does not presently) purchase or sell any products in the District of Columbia.

16. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI did not (and does not presently) maintain an office or telephone number in the District of Columbia.

17. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI was not (and is not presently) listed in the telephone book or the yellow pages in the District of Columbia.

18. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI did not (and does not presently) own, lease, use, possess, or have an interest in any real or personal property in the District of Columbia.

19. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI did not (and does not presently) pay any real estate or other taxes in the District of Columbia.

20. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI did not (and does not presently) insure or act as surety for or on behalf of any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia.

21. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI did not (and does not presently) have or maintain any bank accounts in the District of Columbia.

22. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI did not (and does not presently) conduct any public relations or marketing efforts in the District of Columbia.

23. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI did not (and does not presently) advertise its business in the District of Columbia in any print, television, or radio media, or otherwise target residents of the District of Columbia for the purpose of generating any sales or other revenue in or from the District of Columbia.

24. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI did not (and does not presently) derive any revenue, directly or indirectly, from the District of Columbia.

25. At the time of Plaintiffs' alleged injuries in June 2004 and October

2004, and when the Complaint was filed in May 2007, EMOI did not (and does not presently) maintain an agent for service of process in the District of Columbia.

26. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI was not (and is not presently) a member of the Chamber of Commerce in the District of Columbia.

27. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI was not (and is not presently) a signatory to nor a participant in any contractual or other business relationship with the U.S. Government or any of its agencies in the District of Columbia or elsewhere in the United States of America.

28. EMOI's sole shareholder is Mobil Exploration and Producing North America Inc. ("MEPNA"). MEPNA's sole shareholder is Mobil Corporation. Mobil Corporation's sole shareholder is Exxon Mobil Corporation. ExxonMobil Oil Corporation has no direct or indirect ownership interest in EMOI.

29. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI observed (and presently continues to observe) its corporate formalities and maintained (and presently continues to maintain) a corporate existence that is separate from Mobil Corporation, ExxonMobil Oil Corporation, and Exxon Mobil Corporation. EMOI has a separate and independent board of directors, articles of incorporation, by-laws, and abides by all requirements for maintaining its separate corporate status under Cayman Islands law. EMOI has not and does not share employees or office

space with any of Mobil Corporation, ExxonMobil Oil Corporation, or Exxon Mobil Corporation.

30. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI maintained (and presently continues to maintain) separate books, records, budgets, payroll, and bank accounts from Mobil Corporation, ExxonMobil Oil Corporation, and Exxon Mobil Corporation. EMOI does not commingle assets with Mobil Corporation, ExxonMobil Oil Corporation, or Exxon Mobil Corporation.

31. EMOI is fully capitalized and has been since its formation in 1967. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI maintained (and presently continues to maintain) its financial statements separate from Mobil Corporation, ExxonMobil Oil Corporation and Exxon Mobil Corporation. None of, Mobil Corporation, ExxonMobil Oil Corporation, or Exxon Mobil Corporation provide operating expenses to EMOI. EMOI pays dividends to its shareholder only by a vote of EMOI's board of directors, and only when EMOI has sufficient retained earnings to do so. EMOI has never been insolvent.

32. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, EMOI was (and presently is) solely responsible for the day-to-day management of its business. In the course of managing its business, EMOI has adopted as its own certain general management policies and guidelines of Exxon Mobil Corporation. However, none of Mobil Corporation, ExxonMobil Oil Corporation, or Exxon Mobil

Corporation control or perform EMOI's day-to-day activities, such as the hiring and firing of EMOI's employees, bookkeeping, or management of operations, equipment purchase or finances.

33. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, none of Mobil Corporation, ExxonMobil Oil Corporation, or Exxon Mobil Corporation conducted (nor do any of them presently conduct) any business transactions or solicited (nor do any of them presently solicit) any orders or sales in the District of Columbia for the business benefit of EMOI.

34. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, none of Mobil Corporation, ExxonMobil Oil Corporation, or Exxon Mobil Corporation performed (nor do any of them presently perform) any business-related sales on behalf of EMOI in the District of Columbia that were (are) intended to benefit or advance EMOI's business or pecuniary interests in the District of Columbia or that were (are) necessary or essential to the maintenance of EMOI's business operations in Indonesia.

35. At the time of Plaintiffs' alleged injuries in June 2004 and October 2004, and when the Complaint was filed in May 2007, none of Mobil Corporation, ExxonMobil Oil Corporation, or Exxon Mobil Corporation held (nor do any of them presently hold) themselves out as EMOI's agent in the District of Columbia for purposes of negotiating, selling, purchasing, or contracting for products or services by or on behalf of EMOI in the District of Columbia.

36.  The facts set forth herein are based on my personal knowledge or have been verified by me after appropriate inquiry.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 17th, 2007.

_____ 17 September, 2007.
PETER J. COLEMAN

# EXHIBIT 1

**FILED UNDER SEAL**

# EXHIBIT 2

# THE SAFEGUARDING OF NATIONAL VITAL OBJECTS
(Presidential Decree No.63/2004 dated August 5, 2004)

THE PRESIDENT OF THE REPUBLIC OF INDONESIA,

Considering:
a. that national vital objects play an important role in the life of the nation and the state from the standpoint of economic, political, social, cultural, defence and security aspects;

b. that to prevent any further escalation of threat and disturbance to national vital objects including terrorist act, it is deemed necessary to adopt steps to safeguard the national vital objects by means of a presidential decree.

In view of:
1. Article 4 paragraph (1) of the 1945 Constitution;

2. Law No.2/2002 on the Police of the Republic of Indonesia (Statute Book of 2002 No.2, Supplement to Statute Book No.4168);

3. Law No.3/2002 on State Defence (Statute Book of 2002 No.3, Supplement to Statute Book No. 4169);

4. Law No.15/2003 on the Endorsement of Government Regulation in lieu of Law No.1/2002 on the Eradication of Terrorism, into Law (Statute Book of 2003 No.45, Supplement to Statute Book No.4284);

DECIDES:

To stipulate:
PRESIDENTIAL DECREE ON THE SAFEGUARDING OF NATIONAL VITAL OBJECTS.

### Article 1
Hereinafter referred to as:
1. National vital objects mean strategic areas/locations, buildings/installations and/or business undertakings related to the interests of the people at large and the state and/or the sources of state revenues.

2. The management of national vital objects means the authorized apparatuses of the national vital objects.

3. Safeguarding means all efforts, works and activities carried out to prevent, avoid and control any threat and disturbance to national vital objects as well as to take legal measures against the perpetrators.

4. Threat means any form of attempt and activity, either internal or external, which has the potential to endanger the continuation of national vital objects.

5. Disturbance means a concrete action which leads to the loss of lives and/or properties and may cause psychic trauma to the personnel/employees of national vital objects.

### Article 2
The strategic national vital objects referred to in Article 1 point 1 shall meet one, part or all of the following characteristics:
1. producing basic necessities;
2. threat and disturbance to the national vital objects cause a disaster to humanity and development;
3. threat and disturbance to the national vital objects put the national transportation and communication system in disarry; and/or
4. threat and disturbance to the national vital objects disturb the running of government.

### Article 3
The national vital objects referred to in Article 1 point 1 and Article 2 shall be declared by means of a decree of the relevant minister and/or chief of non-ministerial agency.

### Article 4
(1) The management of national vital objects shall be responsible for the safeguarding of the national vital objects based on the principles of internal security.

(2) The Police of the Republic of Indonesia shall give assistance to safeguard national vital objects.

### Article 5
(1) The management of national vital objects, along with the Police of the Republic of Indonesia shall stipulate standard configuration to safeguard the national vital objects, including the strength of personnel and the facilities to safeguard the national vital objects.

(2) In providing internal security the management of national vital objects shall meet the standard quality or capacity stipulated by a decision of the Chief of the Police of the Republic of Indonesia and consider inputs from the relevant ministry/agency as well as the internationally accepted standards.

(3) The management of national vital objects, along with the Police of the Republic of Indonesia shall periodically conduct an audit of the existing security system in accordance with the decision of the Chief of the Police of the Republic of Indonesia.

Article 6

The Police of the Republic of Indonesia shall deploy personnel to the national vital objects according to the needs and the level of possible threat and/or disturbance.

Article 7

In safeguarding national vital objects, the Police of the Republic of Indonesia may ask for assistance from the National Defence Forces in accordance with the law in force.

Article 8

The safeguarding of national vital objects which become an organic part or the territory of the National Defence Forces shall be conducted by the National Defence Forces.

Article 9

The safeguarding of national vital objects conducted by the National Defence Forces shall be handed over to the management of the national vital objects in no more than 6 (six) months after this Presidential Decree began to take effect.

Article 10

(1) This Presidential Decree shall not apply to the safeguarding of the presidential and vice presidential palaces and the official residences of the president and vice president.
(2) All provisions on the safeguarding of national vital objects that contradict this Presidential Decree shall be declared null and void.

Article 11

This Presidential Decree shall come into force as from the date of promulgation.

For public cognizance, this Presidential Decree shall be promulgated by placing it in the Statute Book of the Republic of Indonesia.

Stipulated in Jakarta
on August 5, 2004
THE PRESIDENT OF THE REPUBLIC OF INDONESIA,
sgd.
MEGAWATI SOEKARNOPUTRI

Promulgated in Jakarta
on August 5, 2004
THE STATE SECRETARY,
sgd.
BAMBANG KESOWO

STATUTE BOOK OF THE REPUBLIC OF INDONESIA OF 2004 NUMBER 79

---===( S )===---

Business News 7120-7121/6-10-2004

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE VIII, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>EXXON MOBIL CORPORATION, et al.,<br><br>      Defendants. | Case: 1:07-cv-01022 (LFO) |

**[PROPOSED ORDER]**

Upon consideration of Defendants' Motion To File Document Under Seal, it is on this ____ day of _____, 2007, hereby

ORDERED, that Defendants' Motion To File Document Under Seal be, and the same hereby is, granted; and it is further

ORDERED, that Exhibit 1 to Declaration of Peter J. Coleman shall be maintained UNDER SEAL.

_____<br>
United States District Judge