UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JOHN DOE VIII**, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 07-1022 (RCL) |
| **EXXON MOBIL CORPORATION**, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION**

Before the Court is defendants' Motion [20] to Dismiss. Defendants argue eight separate grounds for dismissal. For the reasons set forth below, the Court finds that plaintiffs lack standing. Accordingly, the Court need not address the remaining grounds for dismissal and will grant defendants' motion.

**I. BACKGROUND**

The Court notes that a number of the issues raised by defendants' motion are similar to issues raised in the ongoing matter *John Doe, et al. v. Exxon Mobil Corporation, et al.*, Civ. No. 01-1357 (D.D.C.) ("*Doe I*"). *Doe I*, filed in 2001, involves allegations by eleven anonymous Aceh residents against Indonesian soldiers acting as Exxon Mobil security personnel. *Doe I* (like the instant case) was originally assigned to Judge Oberdorfer of this Court and was transferred to the undersigned in September 2008.

Anonymous plaintiffs John Doe VIII, John Doe IX, John Doe X, and John Doe XI are

citizens of the Aceh Province, Indonesia.[1]  (Compl. ¶¶ 6-9.)  Defendants are four corporations: Exxon Mobil Corporation (EMC), Mobil Corporation (MC), Mobil Oil Corporation (MOC), and Exxon Mobil Oil Indonesia (EMOI).  (*Id.* ¶¶ 10-17.)  EMC is incorporated in New Jersey and has its principal place of business in Texas.  (*Id.* ¶ 10.)  MC and MOC are both wholly owned subsidiaries of EMC with principal places of business in Texas.  (*Id.* ¶¶ 13-14.)  EMOI, another wholly owned subsidiary of EMC, was incorporated in Delaware at the time of the conduct at issue in this Complaint (2004) but was reincorporated in the Cayman Islands in December 2005 (prior to the 2007 filing of plaintiffs' Complaint herein).  (*Id.* ¶ 16.)  EMOI's principal place of business is in Indonesia.  (*Id.*)

Plaintiffs' claims arise from activities related to the Arun natural gas field in Aceh.  Defendants operate several natural gas facilities at the Arun field.  (*Id.* ¶ 34.)  Plaintiffs allege that defendants retained members of the Indonesian military to provide security for the Arun facilities.  (*Id.* ¶ 39.)  Plaintiffs further allege that, while under direction of defendants, the retained soldiers committed a variety of offenses against plaintiffs.  (*Id.* ¶ 48.)  Specifically:

- John Doe VIII alleges that in June 2004, soldiers acting as security personnel shot him in the knee, leaving him unable to work.  (*Id.* ¶ 60.)

- John Doe IX alleges that upon attempting to help John Doe XIII after he was shot, soldiers acting as security personnel dragged him along the ground, injured his arm in the process, and stomped on his head.  (*Id.* ¶ 61.)

- John Doe X alleges that in October 2004, soldiers acting as security personnel kicked him and detained him at a security post, interrogated him about the activies of other villagers, beat him when he provided insufficient answers, then later came to his home and apologized for beating him (while remaining armed).  (*Id.* ¶ 62.)

- John Doe XI alleges that in or around October 2004, soldiers acting as security personnel

---

[1] John Does I-VII are plaintiffs in *Doe I*, Civ. No. 01-1357.

>ordered him to report to a security post where they kicked and punched him and ordered him to bring fruit from his fruit stand to the security post. He also alleges that they visited him several days later to apologize for their actions while warning him not to complain about what happened. (*Id.* ¶ 60.)

Plaintiffs filed suit in May 2007 alleging battery, assault, false imprisonment/false arrest, intentional infliction of emotional distress, negligence, negligent hiring, and negligent supervision. (*Id.* ¶¶ 83, 93, 97, 101, 106, 110.)

## II. DISCUSSION

Defendants move for dismissal of some or all of plaintiffs' claims under eight separate theories: (a) lack of standing for alien plaintiffs, (b) various prudential bars to jurisdiction (act of state, comity, political question, and foreign affairs preemption doctrines), (c) failure to join an indispensable party, (d) statute of limitations, (e) lack of diversity jurisdiction, (f) lack of personal jurisdiction over EMOI, (g) choice of law, and (h) failure to state a claim upon which relief can be granted. Because the Court finds that plaintiffs lack standing to sue as nonresident aliens, the Court need not address the remaining grounds for dismissal.

### A.     Legal Standard

For a court to reach the merits of a case, the plaintiff must establish standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing has two distinct components: the case-or-controversy requirements of Article III and the prudential limitations imposed by the courts. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). Article III standing requires: (1) that "the plaintiff must have suffered an 'injury in fact;'" (2) that "there must be a causal connection between the injury and the conduct complained of;" and (3) that the injury is likely to be "redressed by a favorable decision." *Lujan*, 542 U.S. at 560-61 (citations omitted).

Unlike the Article III requirements, the prudential limitations are a product of judicial self-governance, not the Constitution. *Elk Grove Unified Sch. Dist.*, 542 at 12. They "remove jurisdiction where the Article III standing requirements are otherwise satisfied." *ACLU v. NSA*, 493 F.3d 644, 677 (6th Cir. 2007).

Courts "have not exhaustively defined" the prudential limitations of standing. *Elk Grove Unified Sch. Dist.*, 542 at 12. The most well-known prudential limitations are that a party must assert his or her legal rights and that the complaint must be "within the zone of interests of the statute or constitutional guarantee in question." *Cardenas v. United States*, 733 F.2d 909, 914 (D.C. Cir. 1984) (quotation and citation omitted). This case, however, involves a lesser known prudential limitation. Specifically, "the general rule that non-resident aliens have no standing to sue in United States courts." *Berlin Democratic Club v. Rumsfeld*, 410 F. Supp. 144, 152 (D.D.C. 1976) (citing *Johnson v. Eisentrager*, 339 U.S. 763, 776 (1950)).

**B.    Application**

The parties do not dispute that plaintiffs have Article III standing. Accordingly, the issue is whether the general rule that non-resident aliens have standing to sue is a recognized prudential limitation to standing, and if so, whether it applies to this case. The Court finds that the limitation does exist and that it applies to this case.

In *Berlin Democratic Club*, the court announced "the general rule that non-resident aliens have no standing to sue in United States courts." 410 F. Supp. at 152. The court then listed three exceptions to this rule. Non-resident aliens had standing to sue: (1) where the *res* is the United States; (2) where the statutory scheme allows suits by non-resident aliens; and (3) where a non-resident alien is seized abroad and transported back to the United States for prosecution. *Id.*

4

Since *Berlin Democratic Club*, courts have also allowed non-resident aliens to bring certain constitutional challenges.  *See, e.g., Boumediene v. Bush*, 128 S. Ct. 2229, 2262 (2008) (holding that detainees at Guantanamo Bay "are entitled to the privilege of habeas corpus to challenge the legality of their detention").

Plaintiffs do not contend that any of the exceptions to the general rule announced in *Berlin Democratic Club* apply.  Rather, they contend that the general rule does not exist.  (Pls.' Opp'n at 33.)  This argument is without merit.  Plaintiffs' are unable to cite to a single case that is contrary to *Berlin Democratic Club*.  Indeed, none of the cases upon which plaintiffs rely addresses whether *non-resident aliens* have standing.  *See, e.g., Arias v. Dyncorp*, 517 F. Supp. 2d 221, 228-30 (D.D.C. 2007) (addressing whether plaintiffs' state law claims were preempted by federal law, not whether plaintiffs had standing); *Nat'l Coalition Gov't of Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329, 340-43 (C.D. Cal. 1997) (stating that defendant challenged plaintiff's standing on the grounds that plaintiff did not meet the Article III requirements, not on the grounds that plaintiff was a non-resident alien).  Cases that do not address standing are not precedential to establish standing.  *See Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996) (stating that "the existence of unaddressed jurisdictional defects has no precedential effect"); *United States v. More*, 3 U.S. 159, 172 (1805) (Marshall, C.J.) ("No question was made, in that case, as to the jurisdiction.  It passed *sub silentio*, and the court does not consider itself as bound by that case.").

Plaintiffs' reliance on this Circuit's holding in *Cardenas v. United States* is also misplaced.  In *Cardenas*, the court held that one's status as a non-resident alien "does not alter the fact that she suffered a concrete injury in fact sufficient to ground Article III standing."  733 F.2d at 913.  Plaintiffs' Article III standing, however, is not at issue.  The issue is whether

plaintiffs' status as non-resident aliens is a prudential bar to standing. In *Cardenas*, the court stated that when addressing whether non-resident aliens have standing, courts should apply a case-by-case analysis. *Id.* at 916.

Under the case-by-case analytical approach suggested in *Cardenas*, the Court finds that the following factors weigh against plaintiffs' contention that they have standing: plaintiffs allege that members of the Indonesian military committed the torts (Compl. ¶¶ 60-63), and the alleged torts were committed during a period of martial law (Mot. Ex. A). The Court can see no reason to find that plaintiffs have standing in this unique factual context. Indeed, where a non-resident alien "is harmed in his own country, he cannot and should not expect entitlement to the advantages of a United States court." *Berlin Democratic Club*, 410 F. Supp. at 152.

In sum, this Court reaffirms the general rule that non-resident aliens lack standing to sue in United States courts. In applying this rule, the Court finds that plaintiffs do not have standing because plaintiffs are non-resident aliens, the established exceptions to *Berlin Democratic Club* are not applicable, and the unique facts of this case do not support creating a new exception to *Berlin Democratic Club*. Accordingly, the Court shall grant defendants' motion.

### III. CONCLUSION

For the reasons set forth above, defendants' Motion [20] to Dismiss will be granted. A separate order shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on September 30, 2009.